548 F.2d 1347
 77-1 USTC P 9263
 UNITED STATES of America, and Richard Christopher, Special
Agent, Plaintiffs- Appellees,
v.
HODGE AND ZWEIG, a partnership, Richard A. Hodge, a partner,
and Robert M. Zweig, a partner, Defendants-Appellants.
 No. 74-3374.
 United States Court of Appeals,
Ninth Circuit.
 Feb. 16, 1977.
 
 Halinan, Blum, Grode, argued, San Francisco, Cal., for defendants-appellants.
 Gary K. Shelton, Asst. U. S. Atty., San Francisco, Cal., Charles E. Brookhart, argued, App. Section, Tax Div., Dept. of Justice, Washington, D. C., for plaintiffs-appellees.
 Appeal from the United States District Court for the Northern District of California.
 Before BROWNING, Chief Judge, and SMITH* and KENNEDY, Circuit Judges.
 OPINION
 KENNEDY, Circuit Judge:
 
 
 1
 The principal issues on this appeal are whether information demanded by an Internal Revenue Service subpoena is protected by the attorney-client privilege, by the fifth amendment privilege against self-incrimination, or by the rule which prohibits issuance of an IRS summons for an improper purpose.
 
 
 2
 Messrs. Richard A. Hodge and Robert M. Zweig, appellants here, are both members of the State Bar of California and are partners in the practice of law. From all indications in the record, they acted ethically and professionally throughout this matter. This decision may provide further guidance for the proper discharge of their professional responsibilities.
 
 
 3
 In November 1973, Special Agent Christopher of the IRS issued a summons pursuant to 26 U.S.C. § 7602 directed to appellants, individually and as a law partnership. The summons directed the attorneys to produce various business records pertaining to a client, one Joseph Ernest Sandino, Jr., for the calendar years 1970, 1971, and 1972. The requested information pertains to: (1) payments received by the attorneys from Sandino for legal services rendered to him; (2) payments received from Sandino for services rendered to Rena Sandino Joseph, Cindy Purdy, and Stephen Purdy; (3) payments received from Sandino on behalf of any other person; (4) payments received from any other person on behalf of Sandino. The attorneys refused to comply with the summons. The United States thereupon petitioned the district court for enforcement. The court directed compliance, and the attorneys appeal.[1]
 
 
 4
 About the same time as the IRS inquiry into Sandino's financial affairs, a protracted grand jury investigation centering around alleged drug activities of Sandino and some of his confederates was in progress. In order that we may properly consider appellants' claims in this case, it is useful to summarize the chronology of these two investigations.
 
 
 5
 In 1971, a federal grand jury in Nevada began an inquiry into an alleged conspiracy to import drugs by a group that government prosecutors sometimes called "the Sandino Gang." Hodge and Zweig represented several witnesses and suspects called before the grand jury, including Joe Sandino, Rena Joseph, Cindy Purdy, Bernard See, and Robert Gordon. The record before us does not indicate whether Stephen Purdy was a target of the drug investigation. In January 1972, Hodge was called before the grand jury and was asked to disclose information pertaining to fee arrangements and retainer agreements with clients who were being investigated by the grand jury. Zweig was subpoenaed by the grand jury in April 1972 and was asked similar questions. On each occasion, the attorneys refused to answer, invoking both the attorney-client privilege and the fifth amendment privilege against self-incrimination on behalf of themselves and their clients. See and Gordon were subsequently tried for various drug related offenses, including conspiracy to import marijuana, and were found guilty. We affirmed their convictions on appeal. United States v. See, 505 F.2d 845 (9th Cir. 1974).
 
 
 6
 In March 1974, Sandino and several of his associates were charged with conspiracy to import marijuana. In the indictment, the Government alleged that as part of the conspiracy, the conspirators had agreed to provide bail and legal services for participants who were apprehended by law enforcement officials in the course of the criminal activities. Sandino, Rena Joseph, Cindy Purdy, and others eventually pleaded guilty to conspiracy charges and were sentenced.[2]
 
 
 7
 While the above criminal prosecution was pending, the IRS was continuing its tax investigation. Appellants failed to comply with the IRS summons of November 1973, and in August 1974, the district court ordered that the summons be enforced. This appeal followed. In light of this background, we turn to the contentions of the parties.
 
 
 8
 Appellants raise three grounds for reversing the district court's order enforcing the IRS summons. They first argue that the summons was issued solely to gather information in aid of the pending criminal prosecution, and as such was issued for an improper purpose. Second, appellants assert that the fifth amendment bars enforcement of the summons, since compelled disclosure of the requested information would violate their own privilege against self-incrimination and that of their clients. Finally, they claim that the requested information is protected by the attorney-client privilege. We consider these contentions in order.
 
 
 9
 Purpose for Issuing Summons.
 
 
 10
 Appellants argue that the IRS issued the summons solely to gather information in aid of the ongoing narcotics investigation, and as such violated the rule enunciated by the Supreme Court in Donaldson v. United States, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971). In Donaldson the Court stated that enforcement of an IRS summons would be denied where it is issued in the context of "a pending criminal charge or, at most, of an investigation solely for criminal purposes." Id. at 533, 91 S.Ct. at 544, citing Reisman v. Caplin, 375 U.S. 440, 449, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964); Boren v. Tucker, 239 F.2d 767, 772-73 (9th Cir. 1956); and United States v. O'Connor, 118 F.Supp. 248 (D.Mass.1953). The Court emphasized that the authority to issue a summons plays a critical role in enabling the IRS to carry out its broad responsibilities to enforce the tax laws. It expressly held that issuance of a summons was proper "in investigating what may prove to be criminal conduct." 400 U.S. at 585, 91 S.Ct. at 544. The Court concluded that "under § 7602 an internal revenue summons may be issued in aid of an investigation if it is issued in good faith and prior to a recommendation for criminal prosecution." Id. at 536, 91 S.Ct. at 545.
 
 
 11
 Appellants charge that the summons in this case was not issued in good faith and that its sole purpose was to aid the unrelated criminal prosecution for narcotics violations. They conclude, therefore, that the district court should have refused to enforce the summons under Donaldson. The district court specifically found, however, that "the summons was issued in the ordinary course of an investigation of Sandino to determine his tax liability," and therefore not for the sole purpose of assisting in the criminal investigation. We cannot conclude that this determination was clearly erroneous. Fed.R.Civ.P. 52(a); see United States v. Hart, 546 F.2d 798, 801-02 (9th Cir. 1976) (en banc).
 
 
 12
 Appellants nevertheless argue that the Donaldson case precludes enforcement of the summons because agent Christopher had recommended criminal prosecution of Sandino for violation of the Internal Revenue laws. That recommendation was approved by the District Director and forwarded to the Regional Counsel, who requested a continuation of the investigation. The instant summons was issued at some point thereafter, but before the IRS formally recommended prosecution to the Justice Department.
 
 
 13
 An IRS summons may not be issued after a "recommendation" for prosecution. United States v. Zack, 521 F.2d 1366, 1368 (9th Cir. 1975); United States v. Cromer, 483 F.2d 99, 101 (9th Cir. 1973). But the Supreme Court in Donaldson failed to identify which recommendation is critical when testing the enforceability of an IRS summons: the initial recommendation of the special agent, the ultimate recommendation of the IRS to the Justice Department, or some intermediate recommendation. The question has not as yet been resolved in this circuit.
 
 
 14
 In our view, the formal recommendation from the Internal Revenue Service to the Justice Department is the operative recommendation under Donaldson.[3] The recommendation to the Justice Department is a formal indication that the civil and criminal aspects of an investigation have begun to diverge.[4] Absent an independent showing of bad faith or an improper purpose, therefore, enforcement of an IRS summons under the Donaldson rule should be denied only if the summons is issued after the IRS has made a formal recommendation to the Justice Department for criminal prosecution.[5] Since appellants have failed to show that the summons in this case was issued in bad faith or after a recommendation to the Justice Department for prosecution, their reliance on Donaldson is misplaced.[6]
 
 
 15
 Self-Incrimination.
 
 
 16
 Appellants, asserting their own rights and the rights of Sandino, argue that disclosure of the requested records would violate the fifth amendment privilege against self-incrimination.[7] They contend that disclosure would subject them and Sandino to prosecution for various drug violations that were being investigated at the time the summons was issued.
 
 
 17
 As to appellants' assertion of the privilege on their own behalf, the trial court, citing Zicarelli v. New Jersey State Commission of Investigation,406 U.S. 472, 478, 92 S.Ct. 1670, 32 L.Ed.2d 234 (1972), concluded that appellants had "not demonstrated such a real danger of prosecution as would justify quashing the summons on the ground of fifth amendment protection." We cannot say that the court's determination is clearly erroneous. See United States v. Hart, 546 F.2d at 801-02.
 
 
 18
 Neither is disclosure of the information at issue precluded by assertion of the fifth amendment on behalf of Sandino. Sandino entered a plea of guilty to the first count of the drug-related criminal conspiracy charge and has been sentenced. It does not appear that any further charge is pending against Sandino at this time, nor do appellants contend that additional charges are anticipated. We conclude that Sandino is no longer in danger of incriminating himself and thus may not raise the fifth amendment as a bar to compelled testimony. It follows that appellants may not raise the fifth amendment on Sandino's behalf.[8]
 
 
 19
 Attorney-Client Privilege.
 
 
 20
 Appellants next contend that the attorney-client privilege precludes enforcement of the IRS summons. They assert the privilege on behalf of Sandino and other named clients, and on behalf of unnamed clients whose identity would necessarily be disclosed if the summons were enforced.
 
 
 21
 Before the effective date of the Federal Rules of Evidence, this circuit applied the law of the state in which the attorney-client relationship arose to determine whether or not a communication was privileged. Baird v. Koerner, 279 F.2d 623, 632 (9th Cir. 1960). The district court issued its order enforcing the summons in October 1974. Though the Federal Rules of Evidence became effective July 1, 1975, Pub.L. 93-595, § 1, 88 Stat. 1926 (1975), they apply "to further procedure in actions, cases, and proceedings (pending on the effective date), except to the extent that application of the rules would not be feasible, or would work injustice, in which event former evidentiary principles apply." Id. At least in the peculiar context of the instant case, in which the attorney-client privilege is asserted in the course of proceedings to enforce an IRS summons, an appeal from the district court's order of enforcement constitutes "further procedure" in those pending proceedings.[9] Furthermore, application of the Federal Rules to this case is clearly feasible and would in no way work an injustice on either party. We therefore hold that the Federal Rules of Evidence govern our determination.
 
 Fed.R.Evid. 501 provides in relevant part:
 
 22
 Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.
 
 
 23
 Accordingly, we turn to an examination of federal common law in order to rule on appellants' claim that the information requested in the IRS summons is protected by the attorney-client privilege.
 
 
 24
 As a general rule, where a party demonstrates that there is a legitimate need for a court to require disclosure of such matters, the identity of an attorney's clients and the nature of his fee arrangements with his clients are not confidential communications protected by the attorney-client privilege. In re Michaelson, 511 F.2d 882, 889 (9th Cir. 1975); Baird v. Koerner, 279 F.2d at 630; accord, United States v. Jeffers, 532 F.2d 1101, 1115 (7th Cir. 1976); 8 J. Wigmore, Evidence § 2313 (McNaughton rev. 1961). The IRS has demonstrated that the information at issue is sought for a legitimate purpose the collection of tax revenues. As a threshold matter, therefore, the information is not privileged.
 
 
 25
 The general rule, however, is qualified by an important exception: A client's identity and the nature of that client's fee arrangements may be privileged where the person invoking the privilege can show that a strong probability exists that disclosure of such information would implicate that client in the very criminal activity for which legal advice was sought. Baird v. Koerner, 279 F.2d at 630. While in Baird we enunciated this rule as a matter of California law, the rule also reflects federal law. See In re Grand Jury Proceedings, 517 F.2d 666, 671 (5th Cir. 1975); Tillotson v. Boughner, 350 F.2d 663, 666 (7th Cir. 1965). Appellants contend that the Baird exception applies to this case.
 
 
 26
 The Baird exception is entirely consonant with the principal policy behind the attorney-client privilege. "In order to promote freedom of consultation of legal advisors by clients, the apprehension of compelled disclosure from the legal advisors must be removed; hence the law must prohibit such disclosure except on the client's consent." 8 J. Wigmore, supra, § 2291, at 545. In furtherance of this policy, the client's identity and the nature of his fee arrangements are, in exceptional cases, protected as confidential communications.
 
 
 27
 As noted at the outset, the summons directs appellants to supply information pertaining to four types of transactions. The summons first requests information pertaining to legal fees paid by Sandino on his own behalf. There is no doubt that Sandino played an active role in the drug conspiracy; indeed, he pleaded guilty to that offense. Disclosure of this first category of information could in no way further implicate Sandino in criminal activity connected to the drug conspiracy, nor could it identify a suspect heretofore unknown to the Government. We do not understand appellants to argue otherwise. The Baird rule therefore does not apply to this request. The trial court did not err in ordering appellants to disclose information pertaining to legal fees paid by Sandino on his own behalf.
 
 
 28
 The second demand in the summons seeks information concerning payments made by Sandino to the attorneys on behalf of Rena Joseph and Cindy Purdy. The Baird rule is similarly inapplicable to that information. Those two persons, along with Sandino, pleaded guilty to the drug conspiracy; there is no indication that further charges are anticipated. Disclosure of this information would therefore not implicate these persons in the very criminal activity for which they sought legal advice. The trial court was correct in ordering disclosure of this information.
 
 
 29
 The summons also seeks information concerning payments made by Sandino on behalf of Stephen Purdy and unnamed clients, and by unnamed clients on behalf of Sandino. The record gives no indication whether Stephen Purdy was under investigation as a participant in the drug conspiracy; nor is there any evidence before us that he has been indicted or convicted of offenses arising out of the drug investigation. Likewise, we cannot know of the extent of involvement, if any, of possible unnamed clients. The question whether this information is protected by lawyer-client privilege is therefore considerably more troublesome.
 
 
 30
 Once a party seeking disclosure has met the initial burden of showing that it has a legitimate interest in the information requested, the individual asserting the privilege must demonstrate that the conditions of the Baird rule are satisfied. Appellants in this case have met that initial burden as to Stephen Purdy and the unnamed clients. The conspiracy indictment charged that the conspirators agreed to furnish bail and legal fees for those individuals apprehended in the course of the criminal enterprise. If appellants are required to divulge information that would show that the principal conspirator paid Stephen Purdy's legal fees, Stephen Purdy would no doubt be linked to the criminal enterprise by that disclosure. Similarly, disclosure of information pertaining to payments made by or on behalf of unnamed clients could implicate these unnamed clients in the drug conspiracy. Consequently, as a threshold matter, the information appears to be covered by the attorney-client privilege under the Baird rationale.[10]
 
 
 31
 Our inquiry is not at an end, however. Because the attorney-client privilege is not to be used as a cloak for illegal or fraudulent behavior, it is well established that the privilege does not apply where legal representation was secured in furtherance of intended, or present, continuing illegality. United States v. Friedman, 445 F.2d 1076, 1086 (9th Cir. 1971); see Clark v. United States, 289 U.S. 1, 15, 53 S.Ct. 465, 77 L.Ed. 993 (1933); O'Rourke v. Darbishire, (1920) A.C. 581, 604 (Eng.) (per Viscount Finlay); 8 J. Wigmore, supra, § 2298. The crime or fraud exception applies even where the attorney is completely unaware that his advice is sought in furtherance of such an improper purpose. United States v. Friedman, 445 F.2d at 1086; see Clark v. United States, 289 U.S. at 15, 53 S.Ct. 465.
 
 
 32
 To invoke the exception successfully, the party seeking disclosure (here the Government) must make out a prima facie case that the attorney was retained in order to promote intended or continuing criminal or fraudulent activity. United States v. Friedman, 445 F.2d at 1086; see Clark v. United States, 289 U.S. at 15, 53 S.Ct. 465, O'Rourke v. Darbishire, (1920) A.C. at 604. The record on appeal and the supplemental briefs and documents establish such a prima facie case. The information sought by the IRS concerns transactions with the appellants during 1970, 1971, and 1972. The superseding information to which Joe Sandino, Rena Joseph, and Cindy Purdy pleaded guilty charged that the conspiracy began at least as early as June 1971 and ended on November 21, 1974. In fact, there is strong evidence that the conspiracy began earlier, in 1970. The guilty pleas further demonstrate that as an integral part of the conspiracy the participants agreed to furnish bail and legal expenses for conspirators who might be apprehended by law enforcement officials. Presumably, such an agreement was designed to hinder any criminal drug prosecution arising out of the conspiracy; as such, the agreement constituted part of the consideration for engaging in the conspiratorial activity.[11]
 
 
 33
 In light of the above, we conclude that a prima facie case exists that payments to appellants, if any, made during the years 1970, 1971, and 1972 by and on behalf of Sandino were made pursuant to the conspiratorial agreement and thus in furtherance of the continuing drug conspiracy. We therefore hold that disclosure of the information requested in the IRS summons is required.
 
 
 34
 The IRS summons in this case was issued to accomplish a legitimate governmental purpose, viz. the collection of revenues. As noted in our consideration of Donaldson v. United States, supra, the summons was not intended to gather information in aid of the drug investigation. The allegation in the conspiracy indictment charging that the conspirators agreed to furnish each others' legal fees was not a device to circumvent the attorney-client privilege, and the pleas of guilty to the drug offenses by various conspirators establish the existence of such an agreement.
 
 
 35
 In our legal system the client should make full disclosure to the attorney so that the advice given is sound, so that the attorney can give all appropriate protection to the client's interest, and so that proper defenses are raised if litigation results. The attorney-client privilege promotes such disclosure by promising that communications revealed for these legitimate purposes will be held in strict confidence. The privilege encourages persons to seek advice as to future conduct. But so important is full disclosure that the law recognizes the privilege even if the advice is sought by one who has already committed a bad act. Thus, the attorney-client privilege is central to the legal system and the adversary process. For these reasons, the privilege may deserve unique protection in the courts.
 
 
 36
 But a quid pro quo is exacted for the attorney-client confidence: the client must not abuse the confidential relation by using it to further a fraudulent or criminal scheme, and as a condition to continued representation, the lawyer is required to advise the client to cease any unlawful activities that the lawyer perceives are occurring. Law and society consent to the attorney-client privilege on these preconditions. By insisting on their observance, we safeguard the privilege itself and protect the integrity of the professional relation.
 
 
 37
 Because neither the client's identity nor the nature of his fee arrangements are generally privileged, the intrusive effect of our ruling in this case is minimal. And to the extent that appellants' clients had an expectation of confidentiality, that expectation was ill-founded; it has been sufficiently shown that the attorneys were retained in furtherance of a continuing conspiracy. There was a failure of one of the essential preconditions of the privilege. While this is a difficult case, we are convinced that disclosure is required.
 
 
 38
 AFFIRMED.
 
 
 
 *
 Honorable J. Joseph Smith, Senior United States Circuit Judge for the Second Circuit, sitting by designation
 
 
 [1]
 The California Attorneys for Criminal Justice and the American Civil Liberties Union jointly filed a brief as amici curiae
 
 
 [2]
 These persons pleaded guilty to a superseding information that charged that the conspiracy began on or about June 1, 1971 and continued until November 21, 1974. It also charged that as part of the conspiracy, defendants would provide money to be used for bail and legal services for the members of the conspiracy apprehended in the course of the unlawful activity. In addition, Sandino alone pleaded guilty to a second count in the information, charging him with interstate travel to aid an unlawful enterprise, in violation of 18 U.S.C. §§ 1952, 2
 
 
 [3]
 On the internal procedure by which recommendations for criminal prosecution are processed by the IRS, see generally Statement of Organization and Functions §§ 1113.55, 1113(11)22, 1116(3), 1118.6, 1974-1 C.B. 440
 
 
 [4]
 As the Tenth Circuit has stated:
 While a criminal investigation remains solely within the Internal Revenue Service, the civil aspects are inextricably associated with the criminal. It is not until the Service refers a case to the Department of Justice, however, that two distinct agencies are involved and the civil and criminal aspects at least begin to disentangle.
 United States v. Billingsley, 469 F.2d 1208, 1209-10 (10th Cir. 1972) (citations omitted).
 
 
 [5]
 We emphasize that a summons issued prior to the formal recommendation must still be issued in good faith and not for the sole purpose of aiding in a criminal investigation. United States v. Zack, 521 F.2d 1366, 1368 (9th Cir. 1975)
 
 
 [6]
 Different considerations from those at issue in Donaldson might apply where one of the purposes of the summons is to aid in a criminal investigation that is not tax related
 
 
 [7]
 Whether disclosure of these records would violate the fifth amendment rights of appellants' unnamed clients was neither considered by the trial court nor pressed on appeal. We do not reach that issue here
 
 
 [8]
 We do not understand appellants to argue that disclosure is barred because it would incriminate Sandino in income tax violations, nor do we think that appellants could successfully make such an argument. See Couch v. United States, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973); United States v. Cromer, 483 F.2d 99 (9th Cir. 1973)
 
 
 [9]
 Our determination that the Federal Rules of Evidence apply to the instant case is confirmed by decisions under analogous provisions relative to the effective date of the Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure. See Fed.R.Civ.P. 86; Fed.R.Crim.P. 59. It has been held that "pending proceedings" include an appeal from the trial court. In such cases, the newly enacted Federal Rules were held to be the operative rules on appeal. See, e. g., Karn v. United States, 158 F.2d 568, 573 (9th Cir. 1946); United States v. Claus, 5 F.R.D. 278, 280 (E.D.N.Y.1946). See also 12 C. Wright & A. Miller, Federal Practice and Procedure § 3182, at 259 n.35 (1973) and cases cited therein. It has also been stated, in another context, that "(a)n appeal is a proceeding in the original cause and the suit is pending until the appeal is disposed of." Mackenzie v. Englehard Co., 266 U.S. 131, 142, 45 S.Ct. 68, 69, 69 L.Ed. 205 (1924)
 
 
 [10]
 Our analysis assumes, of course, that appellants could show that Stephen Purdy and the various unnamed individuals whose identity they seek to protect are clients. If not, the attorney-client privilege is inapplicable in any event
 
 
 [11]
 This is manifestly not a case where the attorneys were retained in order that the clients could ascertain whether or not some future course of action was lawful