In re GRAND JURY MATTER (SPECIAL GRAND JURY NARCOTICS DECEMBER TERM, 1988, MOTION TO QUASH SUBPOENA). (Two Cases)

John DOE 1; John Doe 2, Appellants,

United States of America,
Plaintiff–Appellee,

v.

UNDER SEAL, Defendant.

In the Matter of, the SEARCH OF A TWO STORY TOWNHOUSE, 2033 EAST BELVEDERE AVENUE, BALTIMORE, MARYLAND 21239, Defendant. (Two Cases)

John DOE 3, Appellant,

United States of America,
Plaintiff–Appellee,

v.

UNDER SEAL, Defendant.

Nos. 90–5339, 90–5340.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 11, 1991.

Decided Feb. 25, 1991.

As Amended March 11, 1991.

Joshua R. Treem, argued (Harry Levy, on brief), Schulman, Treem, Kaminkow & Gilden, P.A., Baltimore, Md., for appellants.

John Francis Purcell, Jr., Asst. U.S. Atty., argued (Breckinridge L. Willcox, U.S. Atty., on brief), Baltimore, Md., for plaintiff-appellee.

Before PHILLIPS and MURNAGHAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.

MURNAGHAN, Circuit Judge:

An attorney and his law firm received a grand jury subpoena requiring the production of documents relating to a client whom they were representing. The district court judge denied their motion to quash the subpoena. They appeal the denial, arguing that the district court erred by denying the motion without a hearing after concluding that the subpoena did not infringe on the sixth amendment right to counsel and the attorney-client privilege. The appellants seek to resurrect *In re Special Grand Jury No. 81–1 (Harvey)*, 676 F.2d 1005 (4th Cir.), *vacated*, 697 F.2d 112 (4th Cir.1982) (*en banc*). As explained below, *Harvey* lacks precedential value and we now reexamine its reasoning.

I.

For some time, Roland Walker, Esquire, and Walker and VanBavel, P.A., had represented Kenneth Jackson, Jr. In 1989, in connection with a grand jury investigation into Jackson's possible violations of federal tax and racketeering laws,[1] the attorneys received a grand jury subpoena directing the production of the following documents:

Any and all documents pertaining to all incoming and outgoing payments by or on behalf of Kenneth Jackson, Jr., relative to all legal and personal matters handled by the firm of Walker and VanBavel, P.A. directly, indirectly or through referral from January 1, 1983 to the present.

The attorneys filed a motion to quash the subpoena, accompanied by a thirteen-page memorandum in support of the motion. The government responded with a four-page memorandum.

The district court judge denied the motion without a hearing on February 13, 1990. He stated, "It is well settled that neither the attorney-client privilege nor the Sixth Amendment prohibits the disclosure of information concerning fee arrangements between an attorney and his clients in response to a grand jury subpoena." After Jackson intervened in the case on April 17, 1990, Jackson and his attorneys appealed.[2]

The attorneys raise two arguments. First, they insist that the district court had to hold a hearing before deciding whether or not to quash the subpoena. A hearing requirement, according to the attorneys, guards against the dangers incumbent in grand jury subpoenas by forcing a district court judge to explore the relation between the information sought and the attorney-client privilege, to inquire into the documents' contents to determine whether they contain protected information, and to assess the government's purpose and need for the information. Second, the attorneys argue that the subpoena impinged on important interests. Although acknowledging that the attorney-client privilege usually does not protect fee information, the attorneys claim the relevancy and existence of an exception when the information would "implicate the client in the very criminal activity for which legal advice was sought." *See In re Grand Jury Investigation (Tinari)*, 631 F.2d 17, 19 (3d Cir.1980), *cert. denied*, 449 U.S. 1083, 101 S.Ct. 869, 66 L.Ed.2d 808 (1981). The attorneys also argue that the issuance of subpoenas to attorneys raises the possibility of their withdrawal from representation, and destroys the client's constitutional right to retain counsel of choice.

The government responds by noting that the local rules for the district court state that motions submitted with memoranda are to be decided without a hearing. More importantly, the government contends that the attorneys bore the burden of showing that "the fee and payment information sought by the grand jury subpoena would in fact cause the disclosure of protected confidential communications." The government argues that the Fourth Circuit case suggesting a hearing requirement

---

1. The attorneys were representing Jackson in the grand jury matter.

2. Jackson and his attorneys will be referred to as "the attorneys" throughout the opinion.

lacks precedential value in this circuit and was based on a Ninth Circuit case which since has been repudiated by that circuit. According to the government, the attorneys failed to offer specific reasons in their memorandum for quashing the subpoena. With respect to the claimed attorney-client privilege, the government insists that it attaches only when the confidential nature of the documents is at issue, not merely because documents may have the potential to harm the client. The government emphasizes that neither it nor the court construed the subpoena to demand anything more than fee arrangements; no confidential documents were requested. The government also states that, as it suggested to the district court, alternatives existed to the actual appearance of the attorney at the grand jury hearing. The subpoena did not force the client to obtain new counsel, and, therefore, the government concludes that the subpoena did not violate the sixth amendment.

### II.

At the outset, we note that appellants base their argument that a hearing must be held to determine whether the government has shown "a purpose, relevance, and an important need" on *In re Special Grand Jury No. 81–1 (Harvey)*, 676 F.2d 1005 (4th Cir.), *vacated*, 697 F.2d 112 (4th Cir.1982). In *Harvey*, the court held that the government must show, *inter alia*, "an important need for the information sought." *Id.* at 1011. *Harvey* is but a shaky foundation for the attorneys.

A subsequent Fourth Circuit case has cast doubt upon *Harvey*. *See United States v. Ricks*, 776 F.2d 455, 465 (4th Cir.1985), *reh'g granted on other grounds*, 784 F.2d 544, *reh'g*, 802 F.2d 731 (4th Cir.), *cert. denied*, 479 U.S. 1009, 107 S.Ct. 650, 93 L.Ed.2d 705 (1986); *see also In re Grand Jury Subpoena Served Upon Doe*, 781 F.2d 238, 247 n. 4 (2d Cir.1985), *cert. denied*, 475 U.S. 1108, 106 S.Ct. 1515, 89 L.Ed.2d 914 (1986) (discussing an unpublished Fourth Circuit opinion addressing *Harvey*). Another circuit's opinion, *In re Osterhoudt*, 722 F.2d 591, 593–95 (9th Cir.

1983), has rejected *United States v. Hodge and Zweig*, 548 F.2d 1347 (9th Cir.1977), the principal support for *Harvey*. *See also In re Grand Jury Subpoenas (Anderson)*, 906 F.2d 1485, 1495 (10th Cir.1990) (reinterpreting other support for *Harvey*).

■ We believe that the cases correctly have signalled the position the Fourth Circuit should adopt with respect to an automatic hearing requirement. Once vacated, *Harvey* lost precedential value within this circuit. More importantly, as the other courts have concluded, a grand jury subpoena for fee arrangement information does not create a *per se* obligation by a district court judge to conduct a hearing. Unless the district court judge decides to hold a hearing, the appellant asserts at least a somewhat compelling basis for the motion, or some exceptional circumstances require a hearing, the district court is not required to hold one. As the dissent in *Harvey* stated, "If the attorney, like any other grand jury witness, shows that the materials are privileged, or overcomes the grand jury's presumption of regularity, then he is entitled to have the subpoena quashed." 676 F.2d at 1013. Attorneys, like all others, have "the initial task of demonstrating ... some valid objection to compliance." *United States v. R. Enterprises*, —— U.S. ——, ——, 111 S.Ct. 722, 730, 112 L.Ed.2d 795 (1991) (Stevens, J., concurring); *see id.* at ——, 111 S.Ct. at 728 (holding that "the burden of showing unreasonableness must be on the recipient who seeks to avoid compliance").

■ The attorneys offered a thirteen-page memorandum and, as discussed below, did not manage to assert any very convincing reason for their motion to quash. They did not carry their burden in the written memorandum and did not deserve a special hearing merely because of their "attorney" status. The government has agreed that the subpoena only will apply to fee arrangements; the more questionable documents that the attorneys may feel present problems are not at issue. The judge acted within his discretion in deciding not to conduct a hearing prior to refusing to quash the subpoena.

## III.

■ One reason that the attorneys offered in support of their motion to quash was a sixth amendment claim. The argument that serving a subpoena on a client's attorneys violates the sixth amendment has been previously addressed and repudiated. The Fifth and Tenth Circuits have stated that " 'a subpoena served upon counsel during representation of a client ... should be quashed only upon a showing that the subpoena would create actual conflict between the attorney and client.' " *In re Grand Jury Subpoena for Attorney Representing Reyes–Requena*, 913 F.2d 1118, 1130 (5th Cir.1990) (*quoting In re Grand Jury Subpoenas (Anderson)*, 906 F.2d 1485, 1494 (10th Cir.1990)). The court continued, "Only the showing of actual conflict, rather than mere speculative assertions, may overcome the concrete 'obligation of every person to appear and give his evidence before the grand jury.' " *Id.* (*quoting, United States v. Dionisio*, 410 U.S. 1, 9–10, 93 S.Ct. 764, 769–770, 35 L.Ed.2d 67 (1973)).

The Fourth Circuit has adopted a similar approach by refusing to hold that "fee payments [are] ... never ... discoverable by a grand jury so long as there remain[s] a possibility of further representation by the same attorney." *United States v. (Under Seal)*, 774 F.2d 624, 628 (4th Cir.1985), *cert. denied*, 475 U.S. 1108, 106 S.Ct. 1514, 89 L.Ed.2d 913 (1986). The court concluded that the sixth amendment right to counsel of choice was not violated even though the compelled disclosure of documents, in theory, could place the attorney in the position of acting as a witness against the client. *Id.* at 627.

Quashing of a subpoena on sixth amendment grounds requires that the prospective disqualification of the attorneys not be merely speculative. Merely speculative disqualification is shown when the material can be presented so as to avoid disqualification. *See (Under Seal)*, 774 F.2d at 628. In the present case, the government suggested various ways in which the disclosure could be made without requiring disqualification of the attorneys. Those methods appear reasonable and viable. As construed by the district court and the government, the subpoena only requested documents relating to fee arrangements. Compliance would not have required attorney disqualification. Although Jackson obtained another attorney, that gesture was by his own initiative. A client generally has a right to obtain new counsel. Doing so does not *ipso facto* raise a sixth amendment violation. The attorneys have shown no grounds for concluding that changing counsel was necessitated by the subpoena to produce fee information. The district judge did not err in deciding that the sixth amendment was not violated.

## IV.

■ The other reason the attorneys claim supported their motion was an alleged violation of the attorney-client privilege. Such an argument possesses as equally dubious status as those discussed above. We have stated that "the attorney-client privilege normally does not extend to the payment of attorney's fees and expenses." *(Under Seal)*, 774 F.2d at 628 (citing cases in other circuits reaching the same conclusion). And, the "burden to demonstrate the applicability of the privilege rests with its proponent." *United States v. (Under Seal)*, 748 F.2d 871, 876 (4th Cir.1984).

In the district court, the attorneys conceded that "[g]enerally, ... matters involving the receipt of fees ..." are not privileged. The attorneys argued, however, that their case fell under the "last link" exception. The attorneys offered in support of the applicability of the exception:

> Certainly, the facts of the instant case indicate a substantial possibility that such [disclosure would constitute the last link] would be the case. The Government is conducting a criminal net worth tax investigation of the Attorney's client. Fee information provided by the Attorney could quite easily provide the last necessary information required to return the indictment.

On appeal, the attorneys appear to have abandoned labelling their argument as a

"last link," and instead argue for the application of an exception that recognizes a privilege " 'where the person invoking the privilege can show that a strong probability exists that disclosure of such information would implicate that client in the very criminal activity for which legal advice was sought.' " *(Under Seal)*, 774 F.2d at 628 (quoting *United States v. Hodge and Zweig*, 548 F.2d 1347, 1353 (9th Cir.1977)).[3] Whatever label the attorneys give to their supposed exception, it involves recognizing a privilege for information implicating the client, regardless of whether it is a confidential communication. Such a privilege receives little support from current case law.

The attorneys have suggested that although *United States v. Ricks*, 776 F.2d 455 (4th Cir.1985), questioned the validity of the exception, nonetheless, the Fourth Circuit intends to apply it. We disagree. In *Ricks*, Chief Judge Harrison L. Winter recognized that *Hodge & Zweig*, the case giving rise to the "exception," "may no longer be good law in the Ninth Circuit. *See In re Osterhoudt*, 722 F.2d 591, 593 (9th Cir.1983). Certainly its purported teaching has been rejected by other circuits." 776 F.2d at 465 (citing decisions by the Second, Sixth, Seventh, and Eleventh Circuits).

The attorney-client privilege protects only confidential communications. "Fee arrangements usually fall outside the scope of the privilege because such information ordinarily reveals no confidential professional communication between attorney and client, and not because such information may not be incriminating." *In re Osterhoudt*, 722 F.2d at 593; *see Ricks*, 776 F.2d at 465. An exception such as the one suggested by the attorneys rests on an unconvincing rationale. In one of the most recent discussions of the issue, the Fifth Circuit wrote,

[certain] cases did not fashion a 'last wink' or 'affirmative link' attorney-client privilege independent of the privileged communications between an attorney and

his client. Thus, the 'last link' or 'affirmative link' language in these cases does not significantly amend the normal scope of the attorney-client privilege....

*In re Grand Jury Subpoena for Attorney Representing Reyes–Requena*, 913 F.2d at 1124. The court continued in a footnote,

... [*In re Grand Jury Proceedings (United States v.)*] *Jones* [, 517 F.2d 666 (5th Cir.1975) ] [a case suggesting a "last link" analysis] "stands needlessly alone" if it created an attorney-client privilege for information that is inculpatory without revealing any confidential communication. Other circuits have either rejected the "last link" doctrine or have interpreted *Jones* (and *Baird v. Koerner* [279 F.2d 623 (9th Cir.1960) ] ) to protect client identity and fee disclosure if disclosure would reveal confidential communications.

*Id.* at 1125 n. 11 (citing Second, Third, Sixth, Seventh, and Ninth Circuit cases); *see Anderson*, 906 F.2d at 1491–92 (concluding that the only exception to the inapplicability of the attorney-client privilege to fee arrangements is the rare circumstance in which compliance with the subpoena will disclose confidential communications); *see also In re Grand Jury Subpoenas (Hirsch)*, 803 F.2d 493, 496–98 (9th Cir. 1986) (holding that the "attorney-client privilege protects a client's identity only in limited circumstances where disclosure would convey the substance of a confidential professional communication").

Although some situations may exist where fee arrangements may constitute confidential communications, the mere fact that the arrangements "evidence wrongdoing by the client" does not implicate the attorney-client privilege. *See Ricks*, 776 F.2d at 465; *In re Osterhoudt*, 722 F.2d at 593. The attorneys offered no evidence that the arrangements, in and of themselves, were confidential communications. As the district court judge decided, the

---

**3.** Although *(Under Seal)* quotes *Hodge and Zweig*, it found the case not to apply. Moreover, in *Hodge and Zweig*, after discussing the

existence of an "exception," the court concluded that it was inapplicable to the fee arrangements requested in the subpoena.

subpoena did not violate the attorney-client privilege.

AFFIRMED.