983 F.2d 1076
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
IN RE GRAND JURY PROCEEDINGS (DOE).
UNITED STATES of America, Petitioner-Appellee,
v.
John DOE, Respondent,
and
Jack Roe, Intervenor-Appellant.
 No. 91-56139.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 8, 1992.
Decided Jan. 15, 1993.
 
 Before POOLE, WIGGINS and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Intervenor-Appellant Jack Roe appeals from the district court's order compelling his attorney to testify before a federal grand jury. He argues that the district court erred in not holding an evidentiary hearing to determine the applicability of the crime-fraud exception. He also argues that the district court erred in not requiring the government to submit a list of questions that it intended to ask the attorney. We have jurisdiction pursuant to the doctrine of Perlman v. United States, 247 U.S. 7 (1918). We affirm the judgment of the district court.
 
 BACKGROUND
 
 3
 Intervenor-Appellant Jack Roe is the target of an ongoing grand jury investigation. Roe intervened in this matter to prevent his attorney, John Doe, from testifying before the grand jury pursuant to a subpoena issued on September 5, 1991.
 
 
 4
 On September 24, 1991, counsel for Doe indicated to the government that Doe might assert the attorney-client privilege in response to questions posed by the grand jury. The government told Doe's counsel that it would seek an ex parte order compelling Doe to answer questions under the crime-fraud exception to the attorney-client privilege. The government did, in fact, file an in camera, ex parte application with the district court for an order compelling Doe's compliance with the September 5, 1991 subpoena. At that time, Roe moved to intervene. He then moved to quash the subpoena asserting the attorney-client privilege with respect to his communications with Doe. Roe's motion did not address the issue of whether the crime-fraud exception applied.
 
 
 5
 On October 11, 1991, the district court granted Roe's motion to intervene, denied his motion to quash the subpoena, and granted the government's motion to compel. The district court expressly found that the information sought in the subpoena was not protected by the attorney-client privilege because the government had made a prima facie showing that the crime-fraud exception applied.
 
 
 6
 On October 15, 1991, the scheduled date of Doe's appearance before the grand jury, Roe requested that the district court reconsider its denial of his motion to quash and its grant of the government's motion to compel. Roe also requested the opportunity to present evidence to rebut the government's prima facie showing that the crime-fraud exception applied. After hearing argument and reviewing the case law, the district court denied the motion for reconsideration. The district court noted that the test for application of the crime-fraud exception was whether the government had made a prima facie showing. Because the government had met its burden, the district court concluded that further review of the evidence was unnecessary.
 
 
 7
 Roe filed a notice of appeal on October 17, 1991. He also moved for a stay pending appeal. We granted the application for a stay on October 28, 1991.
 
 DISCUSSION
 
 8
 I. The District Court Did Not Err In Ruling That Roe Was Not Entitled To An Adversarial Evidentiary Hearing On The Applicability Of The Crime-Fraud Exception
 
 
 9
 Roe claims that he was entitled to an adversarial evidentiary hearing on whether the crime-fraud exception applies to the information that the government seeks from Roe's attorney, Doe. He claims that the district court's refusal to hold an evidentiary hearing violated his constitutional right to due process. The district court did not think it necessary to hold an adversarial hearing on the applicability of the crime-fraud exception before it enforced the grand jury subpoena. We review the district court's decision for an abuse of discretion. See In re Grand Jury Matter, 926 F.2d 348, 350-51 (4th Cir.1991); In re Grand Jury Proceedings (Company X), 857 F.2d 710, 712 (10th Cir.1988); In re Grand Jury Proceedings (Vargas), 723 F.2d 1461, 1467 (10th Cir.1983) (citing In re September 1975 Grand Jury Term, 532 F.2d 734, 737 (10th Cir.1976)). See also United States v. R. Enter., Inc., 111 S.Ct. 722, 729 (1991) (Stevens, J., concurring) (acknowledging that grand juries should not, as a rule, be forced to subject procedures to adversarial minitrials but recognizing that a party objecting to enforcement must be given a chance to show some valid objection; plurality's deferential standard for review of subpoena does not govern in every case).
 
 
 10
 The attorney-client privilege is a rule of evidence that allows a client "to refuse to disclose and to prevent any other person from disclosing confidential communications between he and his attorney." Black's Law Dictionary 118 (6th ed. 1990). Courts long have recognized and protected the privilege because it encourages frank communication between an attorney and client and helps a lawyer to provide accurate and well considered advice, both of which in turn promote the public's interest in observance of the law and in the administration of justice. See Upjohn Co. v. United States, 449 U.S. 383, 389 (1981); In re Grand Jury Subpoenas, 803 F.2d 493, 496 (9th Cir.1986). The shield of the privilege is strongest where a client seeks counsel's advice to determine the legality of his conduct before taking action, particularly if the legal boundaries at issue are difficult for the layperson to discern. United States v. White, 887 F.2d 267, 272 (D.C.Cir.1989); In re Doe, 551 F.2d 899, 902 (2d Cir.1977); cf. In re Grand Jury Subpoenas, 803 F.2d at 496 ("The privilege allows an attorney to avoid what would otherwise be a professional dilemma of cautioning a client against disclosure and rendering perhaps ill-informed legal advice or of learning all the details of a situation and perhaps increasing the perils to the client of disclosure.").
 
 
 11
 Though hallowed, venerable, and useful, the privilege has its limits. The effect of its invocation is to withhold information from the finder of fact; thus, its exercise is allowed only when its purpose--encouraging clients fully to disclose the facts surrounding a legal problem to their attorney--requires it. See Fisher v. United States, 425 U.S. 391, 403 (1976); United States v. Osborn, 561 F.2d 1334, 1339 (9th Cir.1977). Because a "[l]awyers' skills may not be employed ... in furthering crimes," In re Grand Jury Proceedings (Pavlick), 680 F.2d 1026, 1028-29 (5th Cir.1982), and the privilege "is not to be used as a cloak for illegal or fraudulent behavior," United States v. Hodge and Zweig, 548 F.2d 1347, 1354 (9th Cir.1977), we recognize the "crime-fraud exception." See Clark v. United States, 289 U.S. 1, 15 (1933); Hodge and Zweig, 548 F.2d at 1354.
 
 
 12
 To avail itself of the crime-fraud exception, the government must make a prima facie showing that the communications between the target and his lawyer furthered a criminal act. Hodge and Zweig, 548 F.2d at 1354. This means that the government must tender proof sufficiently substantial that it will support a finding in its favor if evidence to the contrary is disregarded. Black's Law Dictionary 1071 (West 5th ed. 1979). See also id. (prima facie proof is proof that "will prevail until contradicted and overcome by other evidence"). "When that evidence is supplied, the seal of secrecy is broken." Clark v. United States, 289 U.S. at 15; In re Grand Jury Proceedings (Doe), 867 F.2d 539, 541 (9th Cir.1989). This court has explained that the government need only present evidence that if believed by the fact finder would establish the elements of a crime or fraud. See United States v. Laurins, 857 F.2d 529, 541 (9th Cir.1988), cert. denied, 492 U.S. 906 (1989).
 
 
 13
 The practice of determining whether the exception applies based on an ex parte proceeding where the government makes in camera submissions was approved by this court in In re Grand Jury Proceedings (Doe), 867 F.2d at 540-41.[1] Although this court directly has not addressed the question of whether an adversarial minitrial should be used to determine the exception's applicability, other courts have found such a hearing unnecessary. See, e.g., In re Grand Jury Proceedings (Vargas), 723 F.2d 1461, 1467 (10th Cir.1983) ("[T]he determination of whether the government shows a prima facie foundation ... can be made ex parte and a 'preliminary minitrial' is not necessary.") (citation omitted) (cited with approval by this court in In re Grand Jury Proceedings (Doe), 867 F.2d at 540). We agree and conclude that an adversarial minitrial is not required to determine whether the government shows a prima facie foundation for application of the crime-fraud exception.
 
 
 14
 Moreover, although the attorney-client privilege is not itself a constitutional right, Clutchette v. Rushen, 770 F.2d 1469, 1471 (9th Cir.1985), cert. denied, 475 U.S. 1088 (1986), this and other courts have found the Due Process Clause implicated in cases such as this one. See, e.g., In re Grand Jury Proceedings (Doe), 867 F.2d at 541 ("[W]e hold that Doe was not denied due process by the district court's in camera inspection of the materials upon which the government based its showing of the crime-fraud exception."); In re Grand Jury Proceedings--Gordon, Witness, 722 F.2d 303, 310 (6th Cir.1983) ("This Court is persuaded that an in camera submission on the facts of this case was a reasonable accommodation of the need to maintain secrecy of the grand jury investigation and the need for prompt resolution of the privilege issue. Hence, this Court finds no abuse of discretion and no deprivation of appellant's right to due process."); In re Special September 1978 Grand Jury, 640 F.2d 49, 58 (7th Cir.1980) ("From our examination of the disputed documents, we, like the trial judge, are persuaded that the secrecy of the in camera documents should be preserved.... In these circumstances, the judge's decision to view the documents in camera did not constitute a due process violation...."). We agree and conclude that there was no deprivation of due process in this case.
 
 
 15
 Even if we were to apply the well-known balancing test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976), we think it clear that the procedure employed by the district court worked no deprivation of due process. Under Mathews,
 
 
 16
 [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail.
 
 
 17
 Id. at 335.
 
 
 18
 Here, so long as the district court may, in its discretion, decide whether the government's prima facie showing has been made and may take whatever steps it deems necessary to convince itself of the applicability of the crime-fraud exception, it is difficult to see how specification of any further requirements could reduce the chance of mistake. Requiring the district court to hear the client's rebuttal to the government's prima facie proffer would in many cases serve no purpose because the government's proof is clear. Furthermore, the Supreme Court has cautioned that needless "procedural delays and detours" in grand jury proceedings frustrate the public's interest in "fair and expeditious administration of the criminal laws." United States v. R. Enter., Inc., 111 S.Ct. at 726-27.
 
 
 19
 Accordingly, we affirm the district court's ruling that it is not necessary to hold a minitrial on the issue of the applicability of the crime-fraud exception and conclude that the procedure employed by the district court worked no deprivation of due process.
 
 
 20
 II. The District Court Did Not Err In Refusing To Screen Each Question The Government Intends To Ask Doe
 
 
 21
 The district court refused to screen the questions the government intended to ask attorney Doe. Although this court has not established a standard of review for this precise issue, Roe's proposed order relates to the scope of questioning of a witness, and we review a district court's control over the manner of questioning a witness for an abuse of discretion. United States v. Taylor, 716 F.2d 701, 710 (9th Cir.1983) (addressing permissible scope of questioning on redirect).
 
 
 22
 Roe claims that the district court should have exercised its discretionary powers to protect Doe from disclosing information that did not fall within the crime-fraud exception. Roe argues that the district court should have required the government to submit the list of questions that it intended to ask Doe so that a neutral magistrate could determine that no one is seeking privileged information.
 
 
 23
 Where questions of privilege are involved, this court has stated that the district court should identify the "broad subject areas of inquiry" so as to ensure that the government's questioning does not exceed its proper scope. In re Grand Jury Investigation of Hugle, 754 F.2d 863, 865 (9th Cir.1985). Once the district court has identified those areas and determined that they will not intrude on privileged information, its duty has been fulfilled.
 
 
 24
 Roe cannot point to any case law to support his contention that the district court individually should review every intended question. Nor was there any reason in this case for the district court to do so. The district court identified the areas about which the government wished to question Doe. The government explained that it wished to question Doe about certain transactions. The government then volunteered to consent to a court order limiting Doe's testimony to those transactions and the district court issued the order. The district court took several precautions above those required by our cases to ensure that Doe would not be compelled to answer questions involving privileged information. The district court did not abuse its discretion by denying Roe's request, and we affirm the district court's denial of Roe's request that all questions be screened prior to Doe's testimony.
 
 CONCLUSION
 
 25
 Well settled case law establishes that the government may proceed ex parte and may make in camera submissions to demonstrate that the crime-fraud exception applies to the sought after testimony. Roe can point to no case law that requires a district court to hold an adversarial minitrial to determine whether the exception applies. Such a requirement would be inconsistent with the principle that grand jury proceedings are non-adversarial and secret. Thus, we refuse to so require.
 
 
 26
 Likewise, Roe's request that each of the government's questions be screened is unreasonable and without legal basis. The district court has discretion to limit the scope of questioning, and it exercised its discretion in a logical manner. The district court, by order, specifically limited the questioning to areas that it had determined fell within the scope of the crime-fraud exception. There is no reason for the district court to have done more.
 
 
 27
 Therefore, the judgment of the district court is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 We do not require pre-subpoena judicial approval of the practice of compelling a target's lawyer to testify before the grand jury. See In re Grand Jury Proceeding (Schofield), 721 F.2d 1221, 1223 (9th Cir.1983). However, our disposition of this case should not be read as an endorsement of routine attempts to force counsel to testify against his client. This court, as well as several others, previously has noted its discomfort with the practice. See United States v. Perry, 857 F.2d 1346, 1347 (9th Cir.1988) ("Many feel, and with some justification, that whatever benefit the government derives from this practice comes at the direct expense of the attorney client relationship."). See also, e.g., United States v. Klubock, 832 F.2d 649, 653 (1st Cir.) ("That there are latent ethical issues in the serving of a subpoena on actual or prospective counsel opponent should be perceived without much difficulty.... The serving of a subpoena [upon a target's counsel even where an indictment has not yet issued] will immediately drive a chilling wedge between the attorney/witness and his client."), aff'd by an equally divided en banc vote, 832 F.2d 664 (1987)